UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| VERICEPT CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 1:08cv180 - Jcc/TcB |
| | ) |
| BRIAN J. TILLETT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

This is an action by Vericept Corporation against its former employee, defendant Brian J. Tillett. Vericept seeks to enjoin Mr. Tillett from providing Vericept's confidential information and trade secrets to anyone, including his current employer and Vericept competitor, Symantec Corporation ("Symantec"); to require him to return to Vericept all of its confidential information and trade secrets in his possession; and to recover damages for injury suffered by Vericept because of the theft of its confidential information and trade secrets.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

2. Venue lies herein under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Vericept's claims occurred in this judicial district.

3. The Court may exercise personal jurisdiction over defendant Tillett because he resides in Virginia.

**PARTIES**

4. Plaintiff Vericept is a corporation engaged in the business of computer data loss prevention. It is incorporated under the laws of Delaware and maintains its principal place of business at 555 Seventeenth Street, Suite 1500, Denver, Colo. 80202.

5. Defendant Brian J. Tillett is a citizen of the Commonwealth of Virginia residing at Aylett, Virginia.

**FACTS**

6. Plaintiff Vericept is engaged in researching, developing, and marketing products to protect against the loss of data from computers. It provides companies with a comprehensive means of discovering, classifying, and protecting sensitive information in motion, at rest and in use. Vericept's patented technology allows companies to mitigate violations of regulatory compliance, intellectual property loss, and customer data loss whether malicious or inadvertent. The technology is deployed in over 750 organizations worldwide and protects billions of pieces of communication every day. Vericept's existing and prospective customers include both private corporations and agencies of the Federal Government, such as the Internal Revenue Service.

7. Defendant Tillett was employed by Vericept from on or about November 8, 2005 until he resigned effective February 8, 2008.

8. While at Vericept, Tillett worked as a Solutions Consultant with responsibility to develop customer relationships and expand Vericept's business, particularly with existing or prospective corporate and government agency clients in the mid-Atlantic region.

9. In his capacity as a Solutions Consultant, Tillett had access to Vericept's confidential information and trade secrets.

2

10. In particular, as a Solutions Consultant, Tillett regularly learned information about Vericept's customers, product packaging and pricing formulas, competitive analyses, product and development plans, strategic planning initiatives, business development plans, and sales plans. All of that information is confidential information and/or trade secrets of Vericept.

11. As a condition of his employment by Vericept, Tillett was required to sign, and on November 8, 2005 did sign, a Proprietary Information and Employee Inventions Agreement ("the Agreement"). A copy of the Agreement is attached hereto as Exhibit A.

12. In that Agreement, Tillett agreed to maintain the confidentiality of all "Proprietary Information" of Vericept.

13. Paragraph 2 of the Agreement defines Vericept's "Proprietary Information" to include

> "trade secrets, confidential information, data or other information relating to products, processes, designs, software programs, formulas, test procedures and results, improvements, inventions or techniques, customer lists, relationships, business plans, marketing plans and strategies, and pricing strategies or other subject matter pertaining to any business of Vericept or any of its suppliers, consultants, independent contractors, licensors, licensees, clients, prospects, customers and affiliates."

14. Paragraph 6.2 of the Agreement prohibits Tillett from using "Vericept proprietary or confidential information to solicit the business of any client or customer of Vericept (other than on behalf of Vericept)."

15. Paragraph 3 of the Agreement required Tillett, upon the termination of his employment by Vericept, (a) to return within 7 days "all materials and documents of any nature pertaining to any Proprietary Information as well as all Property belonging to Vericept" (b) to not take with him any documents or materials containing or pertaining to any Proprietary Information, (c) to not reproduce any Proprietary Information or allow it to be delivered to or

3

used by any third party without Vericept's permission, and (d) to sign and deliver the Termination Certificate, a form of which was attached to the Agreement.

16. Vericept provided Tillett with one or more business computers for use in his employment by Vericept.

17. On January 16, 2008, Tillett had a file on his business computer (or on an external hard drive or a USB thumb drive attached to that computer) containing information concerning Symantec's employee benefits programs.

18. On or about January 28, 2008, approximately 10 days before his last day at Vericept, Tillett attached a Maxtor One Touch external hard drive and a USB thumb drive to one of his business computers and transferred information from the computer to the drives.

19. Neither drive was supplied to Tillett by Vericept.

20. Neither drive was required to be used in the performance of Tillett's work for Vericept.

21. Tillett did not tell anyone at Vericept, either on January 28, 2008 or at any time while he was still employed by Vericept, that he had attached either drive, or that he had transferred information to the drives from his business computer.

22. Also on or about January 28, 2008, Tillett loaded onto the same business computer a software program called Evidence Eliminator, which has the capability to clean data off of a computer such that it is untraceable.

23. On or about January 28, 2008, Tillett used the Evidence Eliminator software program to eliminate data from the computer and make it untraceable.

24. Before running the Evidence Eliminator program, Tillett never told anyone at Vericept that he was going to do so.

4

25. Before running the Evidence Eliminator program, Tillett never sought advice from anyone at Vericept about what information, if any, should be deleted from his computer for any reason, including for the reason of his departure.

26. Tillett did not thereafter tell anyone at Vericept, either on January 28, 2008 or at any time while he was still employed by Vericept, that he had loaded and run the Evidence Eliminator program and eliminated data from his business computer.

27. Tillett gave notice to Vericept of his resignation on Monday, February 4, 2008, announcing that his last day of work would be Friday, February 8, 2008.

28. On that day, February 4, Tillett falsely told his immediate supervisor, Larry Reed, that he was not going to work for any competitor of Vericept's.

29. In reliance of Tillett's statement that he was not going to work for a competitor, Reed invited Tillett to accompany him and another Vericept employee, Tracey Williams, to a business presentation at the Northrup Grumman Corporation's offices at Tysons Corner, Virginia on Thursday, February 7, the day before Tillett left Vericept's employment.

30. On that day, February 7, Tillett falsely told Reed and Williams that he was not going to work for a Vericept competitor, and said that he was not at liberty to identify the company he was going to work for because he had signed a non-disclosure agreement prohibiting him from doing so.

31. At the meeting at Northrup Grumman, Tillett took substantial notes.

32. The only legitimate reason for Tillett to take notes at the Northrup Grumman meeting was so that he could thereafter provide those notes or a summary thereof to Vericept, but Tillett took the notes with him when he departed rather than turning them or a summary of them over to Vericept, in violation of the Agreement.

33. Tillett did not sign and return the Termination Certificate when he left Vericept's employ, in violation of the Agreement.

34. Upon information and belief, Tillett took with him documents and/or materials containing or pertaining to Vericept confidential information and trade secrets, in violation of the Agreement.

35. On information and belief, Tillett reported for work at Symantec on Monday, February 11, 2008, although he had told Vericept the week before that he was going to Florida to visit a friend.

36. On February 12, 2008, Tillett answered his telephone at Symantec when the operator at Symantec's headquarters in Cupertino, California transferred a call to him.

37. Vericept and Symantec (either directly or through its subsidiary Vontu Corporation) are direct competitors in the data loss protection business, in the Mid-Atlantic region and elsewhere.

38. After Tillett's departure from Vericept, Vericept examined his business computers and discovered for the first time that Tillett had attached a Maxtor One Touch external hard drive and a USB thumb drive and loaded the Evidence Eliminator software program onto one of them.

39. On February 15, 2008, Vericept's counsel wrote to Tillett asking for an explanation of his actions as described above.

40. Tillett responded by e-mail of February 21, 2008 asserting that he transferred personal information to the drives and that his use of Evidence Eliminator software program was intended to benefit Vericept.

41. In his e-mail of February 21, 2008, Tillett inquired what he could do "to eliminate any outstanding issues."

6

42. On February 21, 2008, Vericept's counsel responded with the recommendation that Tillett send the Maxtor One Touch external hard drive and the USB thumb drive in their current, unaltered states to Vericept.

43. Tillett has not sent either drive to Vericept or responded in any way to the February 21, 2008 e-mail to him.

## FIRST CAUSE OF ACTION
### (Misappropriation of Trade Secrets under Virginia Uniform Trade Secrets Act)

44. Vericept incorporates by reference the allegations contained in the preceding paragraphs 1 through 43 as if fully set forth herein.

45. The Proprietary Information as defined in the Agreement includes trade secrets under the Virginia Uniform Trade Secrets Act, Va. Code Ann. § 59.1-336.

46. Tillett had a detailed and comprehensive knowledge of Vericept's trade secrets and other confidential information, such as customers, market information, financial information, product packaging and pricing formulas, competitive analyses, product and development plans, business development plans, and sales plans.

47. Vericept took and continues to take reasonable steps to preserve and maintain the secrecy of its trade secrets and other confidential information. These trade secrets and confidential information are not known outside of Vericept. They give Vericept significant advantages in its business and would be invaluable to any competitor of Vericept.

48. Tillett used improper means to acquire and unlawfully take Vericept's trade secrets and confidential information and intentionally converted them to his own use without authorization.

49. The actions taken by Tillett as described above constitute the misappropriation of trade secrets and confidential information in violation of the Virginia Uniform Trade Secrets Act, Va. Code Ann. § 59.1-336.

50. As a direct and proximate result of Tillett's misappropriation, Vericept faces irreparable harm, and, unless and until Tillett is enjoined, will continue to be irreparably harmed.

51. As a direct and proximate result of Tillett's misappropriation, Vericept has been and will continue to be damaged in an amount yet to be ascertained.

52. Tillett's acts of misappropriation were willful and malicious, entitling Vericept to an award of exemplary damages and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

53. Vericept incorporates by reference the allegations contained in the preceding paragraphs 1 through 52 as if fully set forth herein.

54. The Agreement constitutes a valid and enforceable contract executed by the parties.

55 Vericept has fully performed all pertinent terms and conditions associated with the Agreement.

56. The Agreement imposes continuing duties on Tillett to maintain the confidentiality of Vericept's confidential information and trade secrets.

57. By virtue of the conduct described above, Tillett is and continues to be in breach of the terms of the Agreement.

58. As a direct and proximate result of Tillett's breach of the Agreement, Vericept faces irreparable harm, and, unless and until Tillett is enjoined, will continue to be irreparably harmed.

8

59. As a direct and proximate result of Tillett's breach of the Agreement, Vericept has been and will continue to be damaged in an amount yet to be ascertained.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

60. Vericept incorporates by reference the allegations contained in the preceding paragraphs 1 through 59 as if fully set forth herein.

61. By virtue of his employment by Vericept as a Solutions Consultant, Tillett received confidential information and trade secrets of Vericept.

62. Tillett was under a duty to (i) act in good faith; (ii) in a manner he reasonably believed to be in the best interests of Vericept; and (iii) with the care that an ordinarily prudent person in a like position would use under similar circumstances. Tillett continued to have duties of confidentiality to Vericept after terminating his employment on February 8, 2008.

63. Tillett has engaged in a course of conduct in knowing violation of the fiduciary duty he owed Vericept, including improper use of Vericept's confidential information and trade secrets obtained while he was an employee of Vericept.

64. As a direct and proximate result of Tillett's breach of his fiduciary duty, Vericept faces irreparable harm, and, unless and until Tillett is enjoined, will continue to be irreparably harmed.

65. As a direct and proximate result of Tillett's breach of his fiduciary duty, Vericept has been and will continue to be damaged in an amount yet to be ascertained.

## FOURTH CAUSE OF ACTION
### (Conversion)

66. Vericept incorporates by reference the allegations contained in the preceding paragraphs 1 through 65 as if fully set forth herein.

9

67. Tillett intentionally and wrongfully interfered with Vericept's ownership and use of its confidential information and trade secrets and converted Vericept's property and unlawfully took it as his own.

68. Tillett had no right to use Vericept's confidential property in the manner described above.

69. As a direct and proximate result of Tillett's conversion of Vericept's confidential property, Vericept faces irreparable harm, and, unless and until Tillett is enjoined, will continue to be irreparably harmed.

70. As a direct and proximate result of Tillett's conversion, Vericept has been and will continue to be damaged in an amount yet to be ascertained.

## FIFTH CAUSE OF ACTION
### (Copyright Infringement)

71. Vericept incorporates by reference the allegations contained in the preceding paragraphs 1 through 70 as if fully set forth herein.

72. Vericept's confidential information is copyrightable subject matter under 17 U.S.C. § 102.

73. Vericept has complied with the Copyright Act and all other laws of the United States respecting copyrights and is therefore entitled to exercise all rights enumerated under 17 U.S.C. § 501 with respect to its copyrighted material.

74. Upon information and belief, Tillett has violated 17 U.S.C. § 501 by, at a minimum, reproducing, distributing and/or displaying Vericept's copyrighted information without authorization from Vericept.

75. As a direct and proximate result of Tillett's copyright infringement, Vericept faces irreparable harm, and, unless and until Tillett is enjoined, will continue to be irreparably harmed.

76. As a direct and proximate result of Tillett's copyright infringement, Vericept has been and will continue to be damaged in an amount yet to be ascertained.

## SIXTH CAUSE OF ACTION
### (Computer Fraud and Abuse Act)

77. Vericept incorporates by reference the allegations contained in the preceding paragraphs 1 through 76 as if fully set forth herein.

78. The business computer that Tillett used in his Vericept employment was a "protected computer" within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

79. Upon information and belief, Tillett caused the transmission of information from that computer and the Evidence Eliminator software program to that computer, thereby intentionally causing damage without Vericept's authorization to that computer in violation of the Computer Fraud and Abuse Act.

80. As a direct and proximate of Tillett's violation of the Computer Fraud and Abuse Act, Vericept faces irreparable harm, and, unless and until Tillett is enjoined, will continue to be irreparably harmed.

81. As a direct and proximate result of Tillett's violation of the Computer Fraud and Abuse Act, Vericept has been and will continue to be damaged in an amount exceeding $5,000.

## SEVENTH CAUSE OF ACTION
### (Injunctive Relief)

82. Vericept incorporates by reference the allegations contained in the preceding paragraphs 1 through 81 as if fully set forth herein.

83. Unless Tillett is restrained by this Court from breaching and/or continuing to breach his contractual obligations, Vericept will suffer immediate and irreparable injury as a direct and proximate result thereof. More specifically, unless Tillett is restrained, he is likely to erase from

11

the Maxtor hard drive and USB thumb drive any traces of data pertaining to Vericept, depriving Vericept of evidence of his wrongdoing. Vericept will suffer irreparable injury to its business and goodwill in that Tillett and his new employer Symantec will inevitably use the confidential information and trade secrets stolen by Tillett, to Vericept's competitive disadvantage. Such injury, while substantial, may be difficult to calculate with precision. Vericept has no adequate remedy at law to protect it from breaches by Tillett of his contractual obligations, and restraint by injunction is necessary to afford Vericept adequate relief.

84. A temporary restraining order and a preliminary injunction is needed to maintain or restore the parties to the status quo as it existed immediately before Tillett undertook the actions described above.

85. Vericept has a reasonable likelihood of success on the merits of its claims against Tillett.

86. The balance of hardships weighs in favor of Vericept inasmuch as it faces substantial but difficult-to-calculate financial loss, loss of goodwill, and loss of its confidential information and valuable trade secrets, whereas the only hardship imposed on Tillett is to prevent him from breaching his contractual obligations.

87. Under the terms of the Agreement, Vericept is entitled to equitable relief without the requirement of posting a bond or other security, including injunctive relief and specific performance as a remedy for such breach in addition to other remedies available at law or in equity.

88. The public interest will be advanced by the issuance of a temporary restraining order, and then an injunction.

## PRAYER FOR RELIEF

WHEREFORE, Vericept prays that this Court

(1) enter judgment in favor of Vericept on all the claims for relief set forth herein;

(2) issue a temporary restraining order and preliminary and permanent injunction

     a. enjoining Tillett, his agents, servants, affiliates, employees, attorneys, and those persons in active concert or participation with him from taking, receiving, concealing, assigning, transferring, leasing, pledging, copying, or otherwise using or disposing of confidential information, trade secrets, documentation, e-mail communications, computer downloads, data, or technology belonging to Vericept, and from otherwise competing against Vericept;

     b. ordering Tillett to provide an accounting to Vericept of each use he has made of any and all information he has misappropriated from Vericept (including all copies or derivative works prepared from such information), including each disclosure by Tillett of any such misappropriated information to any third party;

     c. ordering Tillett to cease using and to immediately return to Vericept any and all trade secret information, confidential information, know-how, technical information, computer disks, programs, software, hardware, documents, specifications, e mail communications, computer downloads, data, and/or other information that refer to or relate to Vericept, to Vericept products, to Vericept's customers or its business activities, and/or to any technology or know-how used by Vericept, and to provide Vericept and the Court with sworn documentary proof that all such information has been returned;

13

d.  ordering an immediate seizure and independent inspection of Tillett's Maxtor hard drive and his thumb drive to determine if Tillett has documents, email communications, computer downloads, confidential information, or trade secrets belonging to Vericept and, if so, requiring him to return such materials immediately;

(3)  award Vericept its actual damages caused as a result of such unlawful behavior;

(4)  award Vericept exemplary damages;

(5)  award Vericept its costs and attorneys' fees;

(6)  require that Tillett account to Vericept for all profits earned from the sale of Vericept's trade secrets and confidential information; and

(7)  grant such further relief as the Court deems proper under the circumstances.


## JURY TRIAL DEMAND

Plaintiff Vericept hereby demands a trial by jury for all issues raised in the Verified Complaint which are so triable.

Respectfully submitted,

Brooke E. McDonough
VSB No. 65724
William F. Sheehan*
Eric Hager*
Attorneys for Plaintiff Vericept Corporation
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
bmcdonough@goodwinprocter.com
wsheehan@goodwinprocter.com
ehager@goodwinprocter.com

February 26, 2008

* *Pro hac vice* application pending.

## **VERIFICATION**

I, Matt Plasker, state that I am the Chief Financial Officer of Vericept Corporation and that I have read the foregoing Verified Complaint, and that the allegations in the Verified Complaint are true, based on my personal knowledge, except where they are indicated to be based upon information and belief, and as to those allegations I am informed and believe them to be true.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on February 26, 2008.

_____
Matt Plasker

LIBW/1670991.1

16

# EXHIBIT A

## PROPRIETARY INFORMATION AND
## EMPLOYEE INVENTIONS AGREEMENT

In consideration of and as a condition of my acceptance of employment, or continued employment, by *Vericept Corporation* (hereinafter "*Vericept*"), and the release to me of trade secrets, confidential or proprietary information, for use in furthering the Vericept's business, IT IS AGREED:

1. <u>Confidential Relationship</u>

    I understand that my employment creates a relationship of confidence and trust between me and *Vericept* with respect to information: (a) applicable to the business of *Vericept*; or (b) applicable to the business of any supplier, consultant, independent contractor, licensor, licensee, client or customer of *Vericept*, which may be made known to me by *Vericept,* or by any such third party, or learned by me during the period of my employment.

2. <u>Proprietary Information</u>

    I recognize that *Vericept* is engaged in continuous research and development respecting its business, present and future, including fields related to its business, and that *Vericept* possesses and will continue to possess information that has been created, discovered or developed, or has otherwise become known to *Vericept* (including without limitation information created by, discovered or developed by me during the period of or arising out of my employment by *Vericept*), and/or in which property rights have been assigned or otherwise conveyed to *Vericept,* which information has commercial value in the business in which *Vericept* is engaged. Such information is hereinafter called "Proprietary Information." Proprietary Information includes, without limitation, trade secrets, confidential information, data or other information relating to products, processes, designs, software programs, formulas, test procedures and results, improvements, inventions or techniques, customer lists, relationships, business plans, marketing plans and strategies, and pricing strategies or other subject matter pertaining to any business of *Vericept* or any of its suppliers, consultants, independent contractors, licensors, licensees, clients, prospects, customers and affiliates.

3. <u>Nondisclosure and Return of Proprietary Information and Property</u>

    I shall keep confidential and not disclose or make any use of, except for the benefit of *Vericept*, at any time upon acceptance of employment with Vericept, as well as either during or subsequent to my employment, any Proprietary Information which I may produce or acquire in the course of my employment with *Vericept*. I shall not reproduce or allow any such Proprietary Information to be delivered to or used by any third party without the specific direction of *Vericept*. In the event of the termination of my employment with *Vericept* for any reason, (a) I shall deliver within seven (7) days of termination to *Vericept* all materials and documents of any nature pertaining to any Proprietary Information as well as all Property belonging to Vericept (such as computers); (b) I shall not take with me any documents or materials containing or pertaining to any Proprietary Information; and (c) I shall sign and deliver the Termination Certificate attached hereto as Exhibit A.

4. <u>Inventions</u>

    4.1 <u>Definition</u>

        For purposes of this Agreement, all improvements, inventions, designs, programs, software, processes and data, whether or not patented or registered under copyright statutes and whether or not reduced to practice, are hereinafter called "Inventions."

4.2    Disclosures of Inventions and Records

I shall promptly disclose to *Vericept* any invention made or conceived, reduced to practice or learned by me, either alone or jointly with others, during the term of my employment. I shall keep adequate and current written records of all inventions made by me, which records shall remain the property of *Vericept*.

4.3    Assignment of Inventions

All inventions made or conceived, reduced to practice or learned by me, either alone or jointly with others, during my employment, shall be the sole property of *Vericept*, and *Vericept* shall be the sole owner of all patents, copyrights and other rights in connection therewith, provided that each such invention: (a) results, in whole or in part, from use of equipment, supplies, facilities or Proprietary Information of *Vericept*; (b) is developed, in whole or in part, during the hours for which I was compensated by *Vericept*; (c) relates to the business of *Vericept* or to its actual or demonstrably-anticipated research and development; or (d) results, in whole or in part, from work performed by me for *Vericept*, or is suggested, in whole or in part, by any task assigned to me by *Vericept* or work performed by me for *Vericept*. I hereby assign to *Vericept* any and all right, title and interest that I may have or acquire in and to such inventions.

4.4    Execution of Documents

I shall execute, acknowledge and deliver to *Vericept*, upon request and at its expense, all documents, including applications for patents and copyrights, as *Vericept* may determine necessary or desirable to apply for and obtain letters, patents and copyrights on such assigned inventions and/or to protect the interest of *Vericept* in such inventions, patents and copyrights and to vest title thereto in *Vericept*. In the event that *Vericept* is unable for any reason to secure my signature on any document needed in connection with the actions in this Section 4.4, I hereby irrevocably designate and appoint *Vericept* and its duly-authorized officers as my lawful and lawfully permitted attorneys-in-fact to further the prosecution and issue of patents, copyrights or other rights thereon with the same legal force and effect as if executed by me.

4.5    Prior Inventions

All inventions patented or not patented, which I made prior to my employment by *Vericept*, are excluded from the scope of this Agreement. I have set forth on Exhibit B, attached hereto, a list of all of my prior inventions which are not the property of a previous employer.

5.    Trade Secrets of Others

My performance of the terms of this Agreement, and my service as an employee of *Vericept*, does not and will not breach any agreement to keep in confidence proprietary information or material acquired by me in confidence prior to my employment with *Vericept*. I shall not disclose to *Vericept*, or induce *Vericept* to use, any confidential or proprietary information or material belonging to any previous employer or others.

6.    No Conflicting Employment: No Inducement of Other Employees or Solicitation of Customers

6.1    During the period of my employment by *Vericept*, I will not engage in any other employment or business activity directly related to the business in which *Vericept* is now involved or becomes involved, nor will I engage in any other activities which conflict with my obligations to *Vericept*.

6.2    During the period of my employment by *Vericept* and for two (2) years after the date of termination of my employment by *Vericept*, I will not (a) induce any employee of *Vericept* to leave the employ of *Vericept* or (b) will not use *Vericept* proprietary or confidential information to solicit the business of any client or customer of *Vericept* (other than on behalf of *Vericept*) pertaining to the business of *Vericept*.

7.  Notification of New Employer

    In the event that I leave the employ of *Vericept*, I hereby consent to the notification of my new employer of my rights and obligations under this Agreement.

8.  Not an Employment Contract

    I agree and understand that nothing in this Agreement shall confer any right with respect to continuation of my employment by *Vericept*, nor shall it interfere in any way with my right or *Vericept*'s right to terminate my employment at any time, with or without cause.

9.  General

    My violation of this Agreement may cause injury to *Vericept* that could not be reasonably or adequately compensated in damages in an action at law. In addition to other remedies provided by law, *Vericept* shall have the right to injunctive or other equitable relief to prevent or curtail any breach of this Agreement. If any provision of this Agreement is or becomes invalid, illegal or unenforceable, the provision shall be substituted with a valid, legal and enforceable provision, which shall be as similar as possible to economic and business objectives as the omitted provision. This Agreement shall be governed by and enforced in accordance with the laws of the State of Colorado applicable to agreements made and to be performed entirely in Colorado. I consent to jurisdiction over matters arising out of this Agreement in the courts in the County of Arapahoe, State of Colorado.

**Accepted and Agreed:**

_____                    Date: _8/00/05_

Employee Signature

_BRIAN J. TILLETT_

Printed Name

**Accepted and Agreed:**
**Vericept Corporation**

By: _____        Date: _November 9, 2005_

Name: _____        Title: _____
         Connell Saltzman                              CFO

**EXHIBIT "A" to Proprietary Rights and Inventions Agreement**

TERMINATION CERTIFICATE

This is to certify that I do not have in my possession, nor have I failed to return, any records, documents, data, specifications, drawings, blueprints, reproductions, sketches, notes, reports, proposals, or copies of them, or other documents or materials, equipment or other property belonging to *Vericept Corporation*, its subsidiaries, affiliates, successors or assigns (together "*Vericept*").

I further certify that I have complied with and will continue to comply with all of the terms of the Proprietary Information and Employee Inventions Agreement signed by me with *Vericept*, including the reporting of any inventions (as defined therein) conceived or made by me covered by the Agreement.

I further agree that in compliance with the Proprietary Information and Employee Inventions Agreement, I will preserve as confidential all trade secrets, confidential information, knowledge, data or other information relating to products, processes, know-how, designs, formulas, data bases, computer programs, test data, customer lists or other subject matter pertaining to any business of *Vericept* or any of its suppliers, independent contractors, clients, customers, consultants, licensors or licensees.

8 NOV 05
_____              _____
Date                                   Employee Signature

                                       BRIAN J. TILLETT
                                       _____
                                       Printed Name

**ALL NEW HIRES MUST INITIAL AND DATE THE BOX BELOW.**

> This document is not to be signed at time of employment. It is provided for review at time of employment so that employee may be aware of what he or she will be asked to sign upon leaving the employ of Vericept Corporation.
>
> Reviewed and initialed this date: _____
>                                    Initials and Date

### EXHIBIT "B" to Proprietary Rights and Inventions Agreement

PRIOR INVENTIONS

All inventions, patented or not patented, made prior to my employment by *Vericept Corporation,* are excluded from the scope of this Agreement. The following is a list of all of my prior Inventions which are not the property of a previous employer.

Inventions:

| STATE "NONE" IF THERE ARE NO ITEMS TO BE LISTED AND SIGN |
|---|

*NONE*

Date: 8 NOV 05

Employee Signature

BRIAN J. TILLETT

Employee Printed Name:

Date: November 9, 05

Vericept Corporation:

Printed Name: